**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02056

EXCEL CONSTRUCTION GROUP, LLC,

     Plaintiff,

v.

CSAA GENERAL INSURANCE COMPANY,

     Defendant.

---

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

---

     Excel Construction Group, LLC, Plaintiff herein, files this Original Complaint and Jury Demand against Defendant CSAA General Insurance Company ("CSAA") and, in support of its causes of action, would respectfully show the Court the following:

**I.
THE PARTIES**

     1.    Excel Construction Group, LLC (hereinafter "Plaintiff" or "Excel") is a limited liability company formed in the state of Texas. Its sole member is Felix O. Salinas, who resides in Haslet, Texas. Excel Construction Group, LLC's corporate office is located at 5701 Watauga Rd, Watauga, Texas 76148.

     2.    Upon information and belief, at all times relevant herein, Defendant CSAA General Insurance Company (hereinafter "CSAA") was, and is, an Indiana company, incorporated in Indiana, authorized to do business in the State of Colorado, with its principal place of business located at 450 E. 96th Street, Suite 500, Indianapolis, IN 46240. CSAA's registered agent for

service in Colorado is C T Corporation System, located at 7700 E. Araphaoe Rd., Ste. 220, Centennial, CO, 80112-1268.

## II.
## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction of this cause of action under 28 U.S.C. § 1332.

4.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the District of Colorado. The property at issue in this case is located in the District of Colorado. Further, Defendant purposefully availed itself of the law of the State of Colorado by conducting business and selling insurance policies including the subject policy in Colorado and deriving profit from Colorado residents.

## III.
## FACTUAL BACKGROUND

5.     James Grant is the named insured under CSAA's Policy No. COH3-206421237 ("Policy") providing coverage for the perils of wind and hail to the property located at 3885 Saddle Rock Road, Colorado Springs, Colorado, 80918 ("Property") for the term of the Policy.

6.     On or about July 29, 2019, at all times during the Policy period, the Property sustained catastrophic damage caused by hail and wind. The hailstorm/windstorm on this date in Colorado Springs, Colorado resulted in damage from hail measuring at least one (1.00) inch in diameter.

7.     On or about November 19, 2019, Grant transferred his rights, proceeds and benefits due to Grant for the damage relating to the loss and Claim to Excel Construction Group, LLC.

8.     The photographs document the obvious widespread damage to the Property from the covered perils of hail and wind from the storm:



9.    Grant/Excel reported the claim to CSAA after the July 29, 2019 storm event and filed a claim under the Policy for the extensive damage to the Property, including its roofing system, caused by the covered perils of hail and wind.

10.    CSAA acknowledged receipt of the claim and assigned Edgar Marrufo ("Marrufo") and Renee Hernandez ("Hernandez"), adjusters with CSAA, to investigate the loss. CSAA assigned claim number 1003-55-5752 ("Claim") to the loss.

11.    Hernandez inspected the Property on November 18, 2019. At the inspection, against the directions and warnings of Grant, Hernandez walked across the DECRA roofing tiles of the Property, as seen below:



By walking on the roofing tiles in the manner shown above, Hernandez blatantly disregarded DECRA's Roof System Walking Instructions:

  

12.     As a result of Hernandez's improper inspection, Grant's roof was further damaged. Specifically, Hernandez stepped on the raised portion of the DECRA shingles when, in reality, DECRA's Roof System Walking Instructions strictly advise to walk only within the barrels on the battens to prevent causing damage to the panels or cracking the zinc coating within the shingle materials. Thus, not only was Hernandez clearly unfamiliar with the type of roofing shingles involved, but she also caused further damage to the shingles, therefore limiting her ability to decipher between what portion of the roof had been damaged by hail and what portion had been damaged by her own foot traffic. Hernandez's improper inspection only added to the extensive amount of hail damage that was already present on the roof.

13.     Hernandez then retained Gary Chenoweth ("Chenoweth") of Gardner Contracting, LLC to inspect the Property. Chenoweth inspected the Property on November 19, 2019. When Chenoweth arrived at the Property, Grant informed him that he was concerned Hernandez had further damaged the roof and requested that Chenoweth investigate to determine if Grant was correct. Shockingly, Chenoweth, too, improperly walked across Grant's roof. Below are only a few of the many pictures that demonstrate Chenoweth's obvious foot misplacement and the damage it caused:







After further contributing to the roof damage, and without conducting any testing, Chenoweth, conveniently, concluded that the extensive hail damage had occurred prior to the Policy period.

14.     CSAA then hired engineer Matthew Sitzmann ("Sitzmann") of Haag Engineering, Inc., an engineering firm retained almost exclusively by insurance companies, to investigate the Property and determine the extent of damages. Sitzmann inspected the Property on January 23, 2020. Despite admitting hail had struck the Property on July 29, 2019 and acknowledging the roofing system had been significantly damaged by a hail storm, Sitzmann somehow concluded that the entirety of the damage was caused by a hail storm from 2012. Sitzmann specifically cited to a weather report showing hail 1 inch in diameter was reported less than one mile from the Property on July 29, 2019. Sitzmann disregarded this significant storm, however, and concluded that "[t]he most recent date for which Core Logic estimated hail large enough to have dented the shingles was June 7, 2012." Sitzmann took no care to explain what precise size would constitute "hail large enough" to have damaged the shingles. Sitzmann simply reasoned that, since hail 2.5 inches in

diameter was reported near the Property on June 7, 2012, the entirety of the damages must have been caused by the 2012 storm. Notably, Sitzmann documented multiple areas of the roofing system that had been damaged by foot traffic. Sitzmann completed this report on February 12, 2020.

15.     On March 2, 2020, <u>nearly four months after CSAA inspected the Property</u>, CSAA issued correspondence denying the entirety of Grant's/Excel's claim. Representative Marrufo purported to rely entirely on Sitzmann's findings, explaining, "According to the inspection report completed by the engineer it is determined hail damage was found to the roofing system, but the hail bruising/dents were weathered and old. The existing hail bruising/dents caused by large hail and last reported date of hail storm large enough to bruise/dent the shingles was on June 7, 2012." Again, Marrufo failed to explain what size hail would be "large enough" to damage the shingles or why hail 1 inch in diameter or another diameter could not have caused the damages.

16.     In light of CSAA's decision, Grant/Excel retained licensed public adjusters in the State of Colorado, William Cox ("Cox") and Bill Watterud ("Watterud") of Insurance Adjusters Group ("IAG"), to fully assess the covered damages and begin working with CSAA to come up with a satisfactory resolution. After a thorough inspection of the Property, IAG determined the total amount of covered damages was **$77,559.67** (after application of the deductible). IAG completed this report on March 10, 2020 and provided a copy to CSAA for review,

17.     On March 19, 2020, CSAA issued correspondence regarding the foot fall damage. In this letter, CSAA curtly explained, "<u>Roof metal appears to have been damaged from foot fault and will compromise the roof. Full roof replacement is warranted</u>. These condition(s) may expose you to increased risk and will need to be remedied by 03/30/2021 or we may be unable to continue your insurance." Thus, not only did CSAA wrongfully deny coverage for the extensive hail

damage and further damage the roof during two separate inspections by improperly walking on it, but CSAA also threatened to discontinue coverage if the roof was not replaced due to the foot traffic CSAA itself caused.

18.     A few weeks later, on April 21, 2020, Grant/Excel received correspondence from claim representative Alia Thompson ("Thompson") informing Grant/Excel that she was the new claims representative on the file. That same day, Thompson issued additional correspondence stating that CSAA was "unable to recognize the Letter of Representation provided" by Grant/Excel because it was signed by Excel and not Grant. In other words, Thompson refused to recognize the legally valid Assignment of Benefits, wherein Grant transferred his rights, proceeds and benefits due to Grant for the damage relating to the loss and Claim to Excel, which had previously been provided to CSAA.

19.     Grant/Excel received yet another slap in the face on April 22, 2020, when Thompson informed Grant/Excel that CSAA would not be granting Grant's/Excel's request for a reinspection. According to Thompson, "To date three inspections have been performed including an inspection by Haag Engineering. As there has been no additional information presented to warrant another inspection of the home your request for a re-inspection is not granted." In other words, CSAA refused to consider IAG's estimate and, instead, chose to stand by its inadequate findings of no coverage.

20.     A few weeks later, on May 12, 2020, Thompson reiterated CSAA's coverage position in a letter wherein Thompson cited to Chenoweth's and Sitzmann's reports for the proposition that the hail damage predated the inception of the Policy. Thompson further noted, "Senior Project Manager Gary Chenoweth lives and works nearby. Mr Chenoweth wrote in the report he drives to and from work on a road a few hundred yards from the Grant residence every

day and has never seen hail damage of this size anywhere near this neighborhood for at least the past seven years." Despite Chenoweth's bold assertions, <u>Excel replaced a roof only .4 mile away from the Property</u> as a result of the July 29, 2019 storm. CSAA would have realized Chenoweth's claim flatly contradicted Sitzmann's report, which documented hail at least 1 inch in diameter falling at or near the Property on July 29, 2019, had CSAA not simply taken Chenoweth's word at face value. However, CSAA was bound and determined to deny coverage for the Property, and it repeatedly disregarded facts such as this that indicated coverage was, in fact, warranted.

21.     Upon receipt of Thompson's May 12, 2020 letter, Cox issued correspondence outlining the plain inadequacies of CSAA's investigation. Cox explained that Chenoweth, on behalf of CSAA, created footfall damage to the roof when he inspected it. Cox also noted that CSAA had admitted the footfall damage warranted roof replacement and even told Grant his Policy may not be renewed if the roof was not replaced. Cox enclosed the DECRA Roof System Walking Instructions, fifteen pictures demonstrating Chenoweth's improper foot traffic on the roofing system and the damage he had caused, and a Sworn Statement in Proof of Loss demonstrating the total amount of damages. Unfortunately, CSAA refused to acknowledge Cox's letter.

22.     On August 14, 2020, <u>after several weeks of being unable to reach Thompson</u>, Cox called CSAA and dialed Thompson's extension. To Cox's surprise, he reached an automated message, which stated, "The extension you have entered is no longer valid, or the person you are trying to reach is no longer handling your claim." Cox was then transferred to another claims representative, who informed him that <u>a fourth adjuster</u>, Janet Connor ("Connor"), had been assigned to Grant's/Excel's claim. In fact, Thompson had not been involved with the claim since June 25, 2020—nearly seven weeks prior to this phone call. Cox was transferred to Connor's extension, but Connor did not answer.

23.     An adequate investigation of the hail/wind damage to the Property during the Policy period would have revealed the significant hail/wind event on July 29, 2019, occurring during the Policy period, required full replacement of the roof. Additionally, CSAA's own representatives, Hernandez and Chenoweth, further damaged the roof by walking on it improperly. To its credit, CSAA at least acknowledged that the foot traffic required full roof replacement—however, it failed to take responsibility for the damage its own representatives caused.

24.     The adjusters and representatives assigned to Grant's/Excel's claim were improperly trained and failed to perform a thorough investigation of the claim. Specifically, Hernandez, Marrufo, Thompson, Connor, and CSAA conducted a substandard inspection of the Property during which they ignored obvious hail damage and spent an inadequate amount of time inspecting the physical Property, failed to conduct any testing of the hail damage and its impact on the structure, and failed to thoroughly scope all of the damage to the Property. CSAA performed zero testing to determine the damage caused by the significant hail impacts.

25.     Although Hernandez, Marrufo, Thompson, Connor, and CSAA were aware of Grant's/Excel's clear and present hail damage, and the reported damage was covered by the Policy, they decided the claim should be denied without conducting a thorough and reasonable inspection of the damage. The adjusters' and engineer's inadequate investigation of the claim was relied upon by CSAA in this action and resulted in Excel's claim being improperly evaluated, undervalued, under scoped, and denied. After requesting CSAA reconsider its improper investigation and failure to properly pay, CSAA remained steadfast in its pretextual denial and, again, did so relying on inaccurate information. Again, this meant Grant/Excel would receive nothing to perform the necessary repairs to the Property.

26.     The roof and other property need to be replaced in their entirety, as admitted by CSAA. Grant/Excel have been unable to complete the work because CSAA wrongfully and unreasonably refused to issue timely payment sufficient to fully repair the damage the storm and foot traffic caused to the Property, failed to address significant areas of damage and failed to provide payment for all coverage implicated in the loss.

27.     CSAA wrongfully and unreasonably failed to pay the entire claim for repairs to the Property even though the Policy provided coverage for losses such as those suffered by the Plaintiff.

28.     CSAA failed to perform its contractual duties to adequately compensate Grant and/or Excel under the terms of the Policy. This includes CSAA refusing to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Grant and/or Excel.

29.     CSAA acted unreasonably by, among other things, failing to compensate Plaintiff for damages under the contractual terms of the Policy, as more fully described above.

30.     Upon information and belief, CSAA knew that its conduct was unreasonable or recklessly disregarded the fact that its conduct was unreasonable.

31.     CSAA's unreasonable conduct was a cause of Plaintiff's damages.

32.     CSAA's conduct constituted a breach of the insurance contract, and a breach of the Colorado bad faith statute, C.R.S. 10-3-1115 and 1116.

33.     In denying Plaintiff's claim, CSAA conducted an improper, outcome-oriented investigation resulting in a biased, unfair and inequitable evaluation of Plaintiff's/Grant's covered loss. Further, CSAA's investigation was substandard at best and pre-determined the outcome

before all facts were known. Further, it took months for CSAA to render a decision at all, causing an unreasonable delay. Worse yet, CSAA misrepresented the terms of the Policy to Grant and/or Excel.

## IV.
## CAUSES OF ACTION

34.     Each of the foregoing paragraphs is incorporated by reference in the following:

**A.     Negligence**

35.     The employees of CSAA, including Hernandez, were in the course and scope of their employment for CSAA when they improperly walked across the DECRA roof damaging it with "foot traffic".  Accordingly, CSAA is liable for the acts of its employees under the doctrine of respondeat superior. CSAA and these employees had a duty to exercise reasonable care in its/their inspection of the Property.

36.     CSAA and its employees knew, or in the exercise of ordinary care should have known, that failing to follow the DECRA Roof System Walking Instructions could cause damage to the DECRA roofing tiles.

37.     CSAA and Hernandez were negligent in failing to follow the DECRA Roof System Walking Instructions by improperly walking on the roof and causing damage by way of foot traffic.

38.     As a direct, immediate and proximate result of CSAA's and Hernandez's negligence, Grant/Excel has suffered injuries, damages, and losses, in an amount to be proven at trial.

**A.     Breach of Contract**

39.     CSAA had a contract of insurance with Plaintiff/Grant. Plaintiff and/or Grant has performed all its obligations under the Policy and/or Plaintiff's/Grant's nonperformance is excused

under applicable law. Plaintiff and/or Grant has/have met all conditions precedent to the extent that any exist under the insurance Policy.

40.    Defendant has failed to perform its obligations under the Policy as specified in greater detail above.

41.    As a direct, immediate and proximate result of Defendant's breaches of the Insurance Contract, Grant/Excel has suffered injuries, damages, and losses, in an amount to be proven at trial.

**B.    Unreasonable Delay and/or Denial in Payment**

42.    Excel is a first-party claimant as that term is defined under C.R.S. §§ 103-1115, 1116.

43.    Defendant unreasonably delayed and denied payment of the claim for benefits owed to Grant and/or Excel without a reasonable basis.

44.    Grant and/or Excel have suffered damages because of the Defendant's unreasonable actions in an amount to be proven at trial.

45.    Pursuant to C.R.S. § 10-3-1116, Plaintiff is entitled to an award of two times the covered benefit, attorneys' fees, and costs as a result of the Defendant's unreasonable course of action.

**C.    Breach of Implied Covenant of Good Faith and Fair Dealing**

46.    Because a contract of insurance existed between CSAA and Grant and/or Excel, CSAA owed Grant/Excel a duty to deal with it fairly and in good faith in performing under the contract.

47.    CSAA has violated its duty of good faith and fair dealing by, among other things, failing to offer to pay Grant/Excel an amount which it otherwise concluded to be a fair and

reasonable amount for their losses and by compelling Excel to institute litigation to recover amounts due under the agreement of insurance with CSAA. CSAA further violated this duty through pretextually conducting an investigation intended to preclude coverage.

48.     CSAA's behavior constitutes bad faith claims handling at Common Law and in violation of the provisions of C.R.S. §10-3-1104(h)(VII), as well as reckless disregard for the rights of its insured.

49.     As a result of CSAA's actions, Excel has sustained damages and losses in amounts to be proved at trial.

**D.     Attorneys' Fees**

50.     Plaintiff engaged the undersigned attorney to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

51.     Plaintiff is entitled to reasonable and necessary attorney's fees because Defendant breached the insurance contract, Plaintiff is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed after the claim was presented.

**TRIAL BY JURY**

42.     Excel requests that its claims be tried to a jury.

**PRAYER FOR RELIEF**

43.     WHEREFORE, Excel respectfully requests that this Court enter judgment in its favor and against the Defendant as follows:

1.     For compensatory damages in an amount to be proven at trial;

2.     For statutory damages and penalties pursuant to C.R.S. §§ 10-3-1115, 1116;

3.     Declaratory relief as the Court deems proper;

4.      For all costs, expenses, and attorney fees incurred by Plaintiff as allowed by any statute, court rule, or contract;

5.      For pre-judgment and post-judgment interest as permitted by statute or court rule; and

6.      For such other relief as the Court may deem just and proper.

Respectfully submitted,

**HOSSLEY & EMBRY, LLP**

By: */s/ Christopher P. Peirce*
        Jeffrey T. Embry
        State Bar No. 46965
        jeff@hossleyembry.com
        Christopher P. Peirce
        State Bar. No. 51921
        cpeirce@hossleyembry.com
        515 S. Vine Ave.
        Tyler, Texas 75702
        (903) 526-1772
        (903) 526-1773 (fax)
        100 Fillmore St., 5th Floor
        Denver, CO 80206
        Phone: (303) 385-8471
        Fax: (303) 385-8401

**ATTORNEYS FOR PLAINTIFF**
**EXCEL CONSTRUCTION GROUP, LLC**